**Howard Dean MILLER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–211.**

Court of Criminal Appeals of Oklahoma.

Feb. 17, 1988.

Lisbeth McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Howard Dean Miller, A/K/A Howard Dean Deckard, appellant, was tried and convicted of Second Degree Rape [21 O.S. Supp.1984, § 1114] (Count I), Forcible Sodomy [21 O.S.Supp.1984, § 888] (Count II), Second Degree Rape by Instrumentation [21 O.S.Supp.1984, § 1114] (Count III), and First Degree Burglary [21 O.S.1981, § 1431] (Count IV), in Case No. CRF–84–233, in the District Court of Comanche County, the Honorable Kenneth L. Youngblood, District Judge, presiding. The jury set punishment at incarceration for fifteen (15) years on Count I, fifteen (15) years on Count II, fifteen (15) years on Count III, and ten (10) years on Count IV. Judgments and sentences were imposed in accordance with the jury's verdict, the sentences to run consecutively. We affirm.

On May 4, 1984, P.B. fell asleep in a recliner while watching television and awoke at approximately 10:00 p.m. when she felt a hand on her shoulder. The intruder, who wore panty hose over his head, forced P.B. at knife point to accompany him to her bedroom. The intruder cut the telephone wire in the bedroom and threatened to harm P.B.'s children if she did not undress. She complied. The intruder then raped and anally sodomized her, forced a shoe polish bottle into her vagina, and raped her once again. At some point during the attack, the attacker touched certain items in the bedroom and pocketed several items, including the victim's driver's license. As the attacker left the bedroom, he warned the victim that if she "charged" him, he would return and "break every bone in her body." The attacker returned

to the bedroom and asked where her husband kept his pistol. She responded that her husband, who was away for military training, did not own a gun. The attacker had rearranged the panty hose over his head by this time, and the victim could see his eyes and nose. P.B. recognized her attacker as the appellant, a sixteen-year-old neighbor who occasionally mowed her lawn.

After the appellant fled, P.B. awoke her children, took them to a neighbor, and called the police. The police took her to a hospital, where she was examined, treated, and a rape kit prepared. P.B. identified her attacker to the police, although she could not give them his name, and identified the various items touched in the bedroom and the items stolen by the appellant. A fingerprint expert lifted latent prints from two of the items in the bedroom. The prints matched the appellant's prints on file with the police department. Furthermore, the victim picked the appellant out of a photographic line-up.

Based upon the fingerprint and photographic identifications, the police obtained a search warrant for the appellant's home. The appellant lived with his parents. The warrant was served on the appellant's sister. The appellant's bedroom door was padlocked from the outside. The sister obtained a key and unlocked the door. The police found the telephone stolen from the victim and a box containing military insignia belonging to her husband on a shelf, and also found the victim's driver's license between the mattress and box springs of the appellant's bed. The police then arrested the appellant at school.

Prior to trial, appellant's counsel raised the issue of the appellant's competency to stand trial. The court sent the appellant to Eastern State Hospital in Vinita, Oklahoma, for observation. The Senior Staff Psychiatrist reported the appellant able to appreciate the nature of the charges against him and able to consult with his lawyer and rationally assist in the preparation of his defense. No mental problems were discovered. The court scheduled a competency hearing for August 30, 1984.

Appellant requested that a six-person jury hear the question of his competency to stand trial. The jury, by a vote of five to one, found the appellant competent to stand trial. Appellant had already been certified to stand trial as an adult.

At trial the appellant testified that P.B. asked him into her home and seduced him. He denied inserting a shoe polish bottle into her vagina, anally sodomizing her, or stealing any of the items found in his room. He claimed the victim loaned the telephone to him. When first arrested, the appellant claimed he found the telephone in a dumpster. The appellant claimed the military insignia seized in his locked bedroom belonged to him and reflected his R.O.T.C. rank. On cross-examination, however, the State brought out that R.O.T.C. insignia differs from regular Army insignia and that the appellant held a different rank in the R.O.T.C. from the insignia found in his room. An insanity defense was not raised at trial.

The appellant's first three assignments of error concern his competency hearing: first, that he was not competent to stand trial as defined by 22 O.S.1981, § 1175.1; second, that the court erred by failing to instruct the competency jury that the State has the burden of proving competency beyond a reasonable doubt once the accused presents clear and convincing evidence of incompetency; and third, that it was error for the jury to find him competent by a 5–1 vote, rather than by a unanimous verdict. The appellant's assignments of error are grounded on two assumptions: first, that the standards for a competency hearing are the same as for an insanity defense raised at trial; second, that the appellant has a constitutional right to a jury trial at a competency hearing with a concomitant right to a unanimous jury verdict. We disagree.

■ The question of an accused's present competency to stand trial is a separate matter from a defense of insanity, that is, the inability to distinguish right from wrong at the time of the offense. Competency is defined as "the *present* ability of a person arrested for or charged with a

crime to understand the nature of the charges and proceedings brought against him, and is able to effectively and rationally assist in his defense." 22 O.S.1981, § 1175.1(1). *See Clark v. State*, 718 P.2d 375, 377 (Okl.Crim.App.1986). *See also Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). Indeed, it is error for the trial court to find the accused competent to stand trial based solely upon the determination that he knew right from wrong at the time of the offense. *Campbell v. State*, 636 P.2d 352, 355 (Okl.Crim.App.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). *See also Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Conviction of an accused while legally incompetent violates due process. *Id.* at 378, 86 S.Ct. at 838.

■ Here, appellant's counsel brought the appellant's competency into issue. The appellant was professionally examined and found to be competent to stand trial. The court then ordered a competency hearing.

> The court, at the hearing on the application, shall determine by clear and convincing evidence, if the person is incompetent. The person shall be presumed to be competent for the purposes of the allocation of the burden of proof and burden of going forward with the evidence.

22 O.S.1981, § 1175.4(B). If the court deems it necessary, or if demanded by the accused, or by a relative, friend, or person with whom the accused resides, a six-person jury shall be impaneled to determine the question of competency and the need for treatment. *See Scott v. State*, 730 P.2d 7 (Okl.Crim.App.1986). Section 1175.4 contemplates that competency shall be determined by the trial court, unless an affirmative demand is made for a jury. Section 1175.4 further presumes competency and places the burden of proof and the burden of persuasion on the accused to prove his incompetence by clear and convincing evidence. If the finder of fact determines the accused is presently incompetent to stand trial, all criminal proceedings must stop and the accused must receive appropriate

treatment, therapy or training to achieve competency. 22 O.S.1981, §§ 1175.2(A), 1175.6(2). If the accused is found incompetent and not capable of achieving competency within a reasonable period of time, and qualifies as mentally ill under Title 43A, the criminal case shall be dismissed without prejudice. 22 O.S.1981, § 1175.6(3). Once competency is restored, the criminal proceedings shall resume. 22 O.S.1981, § 1175.8. Therefore, a finding of present incompetency is not a final adjudication on the merits, requiring the State to prove competency beyond a reasonable doubt, but rather a postponement of all criminal proceedings until competency is restored.

■ The appellant argues that he has a constitutional right to a unanimous jury vote in a competency hearing, relying on *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979). In *Burch*, the Supreme Court ruled that, in a trial of a nonpetty offense to a jury of six, the verdict must be unanimous to convict. *Id.* at 138, 99 S.Ct. at 1627. The appellant's reliance on *Burch* is misplaced. He overlooks the obvious—a jury finding in an incompetency hearing is not a conviction. If the accused is found incompetent, all criminal proceedings are suspended until competency is regained. If found competent, criminal proceedings are resumed. We previously found that the constitutional right to a unanimous verdict attaches when the finder of fact determines the ultimate question of guilt or innocence of the crime charged, *Rounds v. State*, 679 P.2d 283, 287 (Okl.Crim.App.1984), or when the possible punishment includes incarceration. *Williams v. City of Tulsa*, 740 P.2d 737, 738 (Okl.Crim.App.1987). Such is not the case in a competency hearing.

■ Title 22, O.S.1981, §§ 1175.1—1175.8 and 22 O.S.Supp.1987, § 1176 apply only to those accused of a crime. The right to have a jury hear the question of the accused's competency is statutory and must be demanded, otherwise the hearing will be by the court. No finding of the ultimate question of guilt or innocence is involved, nor is an accused subject to fine

or incarceration as a result of a competency hearing. Consequently, a competency hearing is a special proceeding for the purpose of ensuring full compliance with due process requirements, but is not itself a criminal prosecution. Therefore, there is no right under the Sixth and Fourteenth Amendments of the United States Constitution, or under Art. II, §§ 19, 20, of the Oklahoma Constitution, to a jury trial in a competency hearing or to a unanimous jury finding of incompetency.

■■■■ The remaining question is whether the appellant has a statutory right to a unanimous jury vote in a competency hearing. Title 22 O.S.1981, §§ 1175.1—1175.8 and 22 O.S.Supp.1987, § 1176, are silent on whether a finding of incompetence by a jury must be by unanimous vote. The court, in jury instruction number 12, instructed the competency jury that they could reach a finding by a vote of five of the six jurors. The appellant asserts the vote by the jury must be unanimous to find the accused incompetent. We disagree. We previously addressed this question in *Weiland v. State*, 58 Okl.Cr. 108, 50 P.2d 741 (1935):

> The trial of the question of present sanity is in the nature of a special proceeding not involving any question of guilt or innocence, but a collateral issue. The court here followed the civil procedure, that is, he ruled and instructed that the burden was on the defendant on that issue, and that he was entitled to the opening and closing in presenting his testimony and in the argument, and further ruled and instructed that *nine of the jurors might return a verdict. His ruling was in conformity to the statute regulating the procedure in such cases.*

*Id.* at 744 (emphasis added). *See also Tarter v. State*, 359 P.2d 596, 603 (Okl.Crim. App.1961). Nonunanimous, three-fourths, verdicts are permissible in special actions in the nature of civil proceedings where defendants are not subject to a fine or incarceration. *State v. McCain*, 637 P.2d 72, 74 (Okl.1981). Furthermore, the jury vote in the instant case was five for competence and one for incompetence, not five for in-

competence and one for competence. The appellant has failed to prove incompetency by clear and convincing evidence.

■■■■ The question of present competency is a determination of fact, and the standard of review on appeal is whether there is any competent evidence reasonably supporting the finding of the trier of fact on the question. *O'Dell v. State*, 455 Pd.2d 750, 752 (Okl.Crim.App.1969). In reviewing the record evidence, we find the question of appellant's present competence supported by the evidence. These assignments of error are without merit.

For his fourth assignment of error, the appellant asserts that he was denied a fair trial because of four instances of prosecutorial misconduct. Two statements were made by the prosecutor during closing argument. The first concerned a photograph entered into evidence which depicted P.B.'s bedroom after the attack. The photograph clearly shows clothing pulled from drawers, the bedroom telephone with the cut wire, a stool kicked over, and the condition of the bedcovering. The prosecutor asked the jury: "Look at these pictures. Does this room look like the room where two people go and have sexual intercourse willingly and voluntarily or does it look like it has been ransacked?" The second statement analogized the stolen telephone, the military insignia, and the driver's license to trophies.

Appellant also argues that the prosecutor's question on cross-examination whether he had been previously adjudicated a delinquent constitutes error. Appellant timely objected to this question and his prior juvenile record was not revealed to the jury.

Finally, appellant argues it was error to question him whether he resisted having his fingerprints taken during the trial. Appellant's fingerprint card introduced into evidence listed a different middle name from that listed on the information. Appellant put the State to the test of proving he was the same person as that named on the fingerprint card. The State attempted to fingerprint him during recess, but because the appellant refused to cooperate, the offi-

cer only obtained one clear print. The court sustained Defense counsel's objection to this question, and admonished the jury to disregard the question.

The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Both the accused and the State have a right to freely discuss the evidence from their respective viewpoints and draw inferences and deductions arising from the evidence. Only when argument by the prosecutor is grossly improper and unwarranted, and affects the accused's rights, will a reversal be based upon improper argument. *Hartsfield v. State*, 722 P.2d 717, 720 (Okl.Crim.App.1986) (Parks, P.J., dissenting on other grounds). Here, the photographs were introduced into evidence and testimony elicited concerning the condition of the bedroom after the attack. We find the characterization of the bedroom as ransacked, after reviewing the photographs entered into evidence, is a reasonable inference and deduction from the evidence, as was the prosecutor's characterization that the stolen items were trophies. Additionally, the appellant did not object to the trophy analogy, and we will not consider the question on appeal. *Walker v. State*, 723 P.2d 273, 286 (Okl.Crim. App.1986), *cert. denied*, — U.S. —, 107 S.Ct. 599, 93 L.Ed.2d 600 (1987).

The prosecutor's attempt to unsuccessfully bring in the appellant's prior juvenile record was met with a timely objection and sustained. The appellant's prior record was not revealed to the jury. And the trial court sustained the appellant's objection to the question concerning his resistence to having his fingerprints taken and admonished the jury to disregard the question, thereby curing any alleged error. *Walker, supra*, at 286. This assignment of error is without merit.

For his fifth assignment of error, the appellant asserts that because his bedroom was padlocked from the outside, indicating a reasonable expectation of privacy within his room, the police officers had no authority to enter the room without his consent absent exigent circumstances;

therefore, the items seized in his room were the fruits of an illegal search and inadmissible at trial. Again, the appellant overlooks the obvious. The concept of exigent circumstances applies in warrantless searches and seizures. Exigent circumstances permit an officer to substitute his judgment for that of a neutral and detached magistrate as to the existence of probable cause to make a search. *Blackburn v. State*, 575 P.2d 638, 642 (Okl.Crim. App.1978). *See also Fisher v. State*, 668 P.2d 1152, 1156 (Okl.Crim.App.1983).

Here, the police searched the appellant's bedroom under the authority of a warrant issued by a neutral and detached magistrate. The affidavit in support of the warrant was based on the fingerprint evidence found in the victim's home and by her identification of the appellant from a photographic line-up. The evidence amply supported the magistrate's determination that probable cause existed to search the residence. The warrant described with particularity the place to be searched and the items to be seized. The only item seized which was not named with particularity in the warrant was the victim's driver's license, which she did not know was stolen before the warrant was issued. The officers could rely on the warrant and search the entire residence, including the appellant's bedroom, without his consent. This assignment of error is without merit.

For his sixth assignment of error, the appellant asserts that the sentence imposed was excessive under the circumstances. The facts and circumstances of this case reveal the evidence supports the jury's verdict; the record is free from error which would justify a modification or reversal; and the punishment imposed is within the statutory range. *Fincher v. State*, 711 P.2d 940, 942–43 (Okl.Crim.App.1985). Nor does the fact that the sentences are to be served consecutively shock the conscience of the Court, requiring modification of the sentence. *Shultz v. State*, 715 P.2d 485, 488 (Okl.Crim.App.1986). We will not substitute our judgment for that of the trier of

fact in the absense of error at trial. This assignment of error is without merit.

 For his seventh assignment of error, the appellant asserts that he was denied effective assistance of counsel at trial. During closing argument, appellant's counsel stated to the jury:

[A]nd as I say, he's young and insophis—unsophisticated, and he may be a thief. Whether or not he stole the telephone or after being in Mrs. Benson's house with her permission as he stated, that I can't tell you. He may be afraid to admit to any wrong doing thinking—thinking that you will take it—that uh, everything he did was wrong.

Appellant failed to provide any credible explanation for his possession of the items belonging to the victim seized in his room. Counsel attempted to explain away the appellant's possession of those items. The appellant was not charged with theft, but with burglary and three counts of sexual assault. Counsel did not admit appellant's guilt to any of the charged offenses.

There is a strong presumption that counsel's conduct is professional, and the appellant must overcome the presumption that counsel's conduct was sound trial strategy. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). We review an ineffectiveness claim by considering counsel's challenged conduct on the facts of the case viewed at the time of counsel's conduct, *Id.* at 690, 104 S.Ct. at 2066, and determine whether, if the conduct was in fact professionally unreasonable, the error effected the judgment. *Id.* at 691, 104 S.Ct. at 2066. We find the appellant has failed to rebut the presumption that counsel's conduct was sound trial strategy. This assignment of error is without merit.

For his final assignment of error, the appellant asserts that he was denied a fair trial because the jury improperly considered the possibility of parole in setting his sentence. During sentencing deliberations, the jury sent a note to the court asking two questions: first, "Does the jury determine whether jail term is run concurrently, coincide, consecutive?"; second, "Do we consider parole factors?" The court responded negatively to both questions. Appellant's counsel expressly agreed with the court's response. Furthermore, appellant offers no evidence in support of his assignment of error, other than to infer that because the jury asked the question concerning parole, they considered the possibility of parole in their deliberations. The court properly responded to the jury's questions. *Rice v. State*, 666 P.2d 233, 235 (Okl.Crim.App.1983). The record evidence does not support the appellant's bare allegation that the jury considered the possibility of parole in reaching their decision. This assignment of error is without merit.

Accordingly, for the foregoing reasons, the judgments and sentences should be, and hereby are, AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.